Joseph A. Gavagan, J.
This article 78 (Civ. Prae. Act) proceeding is brought by the petitioner for an order directing the respondents as follows: (1) that the Board of Estimate of the City of New York classify petitioner an Administrative Associate, Salary Grade XVI; (2) that the Civil Service Commission of the City of New York certify petitioner to said title, and (3) that the respondents pay to petitioner the difference between his present salary and the salary of Administrative Associate from July, 1954 to the date he is instated in such position, with interest.
*744 Petitioner is an Administrative Assistant employed in the Finance Department of the City Collector’s office, Borough of Brooklyn, and has been so employed since 1928. Prior to 1956, he was a Grade V clerk, salary unlimited, in the Finance Department of the city. In. 1956 he was classified to the title of Administrative Assistant, Salary Grade XIII, pursuant to the Report of the Mayor’s Committee on Management Survey of the City of New York, March 30, 1953, chapter 354 of the Laws of 1954; chapter 35 of the New York City Charter; Resolution of the Board of Estimate, July 9, 1954. On August 19, 1954 the Department of Personnel and the City Civil Service Commission adopted rules to provide for the classification plan. Said rules were affirmed by the Mayor and the Civil Service Commission.
Pursuant to the rules adopted by the Board of Estimate to provide for the classification plan, affirmed by the Mayor and the Civil Service Commission, petitioner, on February 18, 1957, appealed to the Career and Salary Plan Classification Appeals Board for a classification change from Administrative Assistant, Salary Grade XIII, to that of Administrative Associate, Salary Grade XVI. Thereafter the board appointed a hearing panel to take testimony relative to petitioner’s appeal. He appeared before the panel on February 3, 1958, and gave his testimony in respect thereof. Some 18 months later, by notice dated July 30, 1959, petitioner was notified of the denial of his appeal. Petitioner’s application for a review of that determination, pursuant to article 78 of the Civil Practice Act, is now before me.
Petitioner argues that by denying his appeal the board acted arbitrarily and completely without regard to the purposes for which the reclassification of city employees was promulgated. In this respect, it is interesting- and important to look to the report of the Mayor’s Committee on Management Survey of the City of New York (dated March 30, 1953). This report was the original inquiry into the abuses and defects of the City Civil Service classification system and the then existing personnel administration. The report, at pages 181-182, states: “ There is no orderly system of position classification or pay. Positions entailing like duties are often differently classified; persons performing different duties are frequently identically classified; and there are accompanying disparities of pay. These conditions are the result of the failure to establish and develop a classification system; of a lack of job specifications and class definitions; of a lack of adequate classification staff; of insufficient contact between the Civil Service Commission and the operating units with respect to matters of classification; of *745 the blind dependence of the Civil Service Commission on the lead of the Bureau of the Budget in matters of pay administration; of classification of positions according to the incumbents holding them at the moment rather than according to the duties involved; and of assignment of employees to work 1 out of title ’.”
This report resulted in the promulgation of State and city laws to remedy the defects. (L. 1954, ch. 354; New York City Charter, ch. 35; Resolution of Board of Estimate, July 7, 1954.)
This then being the purpose of the Salary and Career Plan, petitioner argues that in its consideration and ultimate determination of the duties and responsibilities which were attached to his position, and in its classification and assignment of petitioner to Salary Grade XIII, the Bureau of Classification and Compensation completely failed to achieve the very objectives sought by the Mayor’s committee and failed to remedy the defects and abuses in personnel administration afore-stated, and moreover, the board, by denying his appeal, has failed to remedy these defects and has acted arbitrarily, without regard to the facts and circumstances in the case of petitioner.
The record before me shows, and it is not contradicted in any way, that petitioner is in charge of the accounts receivable section of the City Collector’s office in Brooklyn; that his actual duties, responsibilities and tasks performed by him daily, are as follows:
“ Petitioner’s unit has the responsibility of maintaining the basic records of the City Collector in the Borough of Brooklyn. These include the individual tax ledgers of every parcel of realty in the Borough, of which there are approximately 300,000. In addition, he has the responsibility of billing and collecting the water tax. These include some 50,000 meters.
‘ ‘ He also maintains printed registers of taxes and frontage water, for which all charges for the" current year are reflected. The same is done for all the realty in the Borough. These records are open to the public and are relied upon by same in any legal transaction affecting the realty. The assembling and maintenance of these records involves a variety of operations and are of an extremely complex nature.
‘ ‘ In addition, he supervises the collection of both water and realty taxes and has the authority to suspend payment for penalties and interest, or to make terms.
‘ ‘ He supervises a staff of over fifty employees, including an accountant. He makes the policy and sets the procedures for the employees to follow.
*746 ‘1 He deals directly with the public on all matters concerning realty and taxes.
1 ‘ He maintains direct liaison with all City departments and is responsible for $125,000 worth of equipment.
“ In addition, petitioner directly supervises a large staff of over fifty persons.”
Included in this staff of 50 persons, are two administrative assistants, one a senior accountant and the other an accountant. These two administrative assistants have the same title and are in the same salary grade as the petitioner. The senior accountant and the accountant are in higher salary grades than the petitioner. It would appear, therefore, that there is merit to petitioner’s contention that to allow this situation to exist, whereby the head of a department is paid at the same rate, or lower than his subordinates, is to frustrate the very principles of the Career and Salary Plan for civil service employees, and that by denying petitioner’s appeal, the board has failed in the purposes for which it was created, and has thereby acted arbitrarily and illegally. Repeatedly, it has been held that it is not the title but the duties which must be controlling in determining civil service categories (Matter of Rohr v. Kenngott, 288 N. Y. 97, 105; Matter of Holt v. Jansen, 127 N. Y. S. 2d 671, affd. 283 App. Div. 796). And this is so true in the case at bar, for here the job of petitioner is clothed with large responsibility and requires divers technical skill and experience. He is given extreme latitude of decision and through his hands pass millions of dollars of taxpayers’ funds which by his discretion determines whether the City of New York receives or pays out millions of dollars. He has great latitude of judgment and consequent responsibility therefore in respect of taxes levied, cancellations, penalties and interest levied and extensions of time for payment. The desk audit forms and the information therein fully support petitioner’s position and the responsibility of his job. To allow petitioner to remain classified as an Administrative Assistant, Salary Grade XIII, would manifestly be unjust and arbitrary. Particularly is this so in light of several other factors which appear in the record before me. Firstly, there is the personal request of the Treasurer of the City of New York, who is the actual head of the Department of Finance, that petitioner be reclassified to the grade of Administrative Associate, Grade XVI, and further urged that his appeal in this respect be granted. The City Treasurer, by her letter of December 2, 1958, approved his request for the higher title. On May 14, 1959 the Treasurer wrote to the Career and Salary Board, advising that petitioner’s position and classification was *747 carefully reviewed, and stated the following: “As supervisor of the Accounts Receivable Section of the Brooklyn office, this position is charged with the function of supervising 50 specialists in the maintenance of vital legal public records pertaining to Real Estate Taxes, and serving the public with accurate information in connection therewith. The duties require a considerable latitude for independent judgment and action and therefore a favorable decision for the title of Administrative Associate Grade 16, is urged.”
Again, on May 15, 1959 the City Treasurer wrote petitioner, advising him of her letter to the Career and Salary Plan Board afore-stated, wherein she stated she was ‘ ‘ very concerned about the outcome of your appeal ” and that she requested a personal conference with the members of the board. Certainly, the City Treasurer was in the best position to evaluate petitioner’s duties, work and value to his department and the job he was responsible for. Nevertheless, her recommendations were of no avail.
The second factor of significance here is that in evaluating petitioner’s job, after completion of both the on-the-job survey and the desk audit, petitioner was classified as Administrative Assistant pursuant to nomenclature and classification appropriate to the duties and responsibilities of his position and in accordance with the definition of the position in question; and that the reclassification as Administrative Assistant was in accordance with the provisions of the plan contained in section VII (par. 1) and section XII. Accordingly, respondent claims the status of petitioner was neither prejudiced nor impaired by reclassifying him from his former position of Clerk, Grade 5, to that of Administrative Assistant, Grade 13. However, the answer to that by petitioner is that a comparison of his actual duties with the duties set forth for the position sought by petitioner— that of Administrative Associate — which duties were promulgated by the respondents themselves as the criteria for the higher title, readily shows that the duties of petitioner are more complex, more exacting, and more responsible. Specifically, the title of Administrative Associate promulgated by the Career and Salary Plan is contained in the Career and Salary Plan Code No. 10130, Salary Grade XVI. This is the title to which petitioner claims he is entitled to classification in. The duties, responsibilities and examples of typical tasks relating to said position are therein described as follows:
“ Duties and Responsibilities
‘ ‘ Under direction, with extensive latitude for independent action or decision supervises a very large office engaged in *748 routine clerical activities, or supervises a large office engaged in departmental administrative or management activities, or performs highly difficult and responsible administrative work.
'' Examples of Typical Tasks
“ Supervises the clerical operations of a large section, or of a division composed of two or more sections. Plans, assigns, and reviews the work of subordinates, and is generally responsible for the satisfactory completion of the clerical work performed in the section or division.
“ Supervises large unit, or a section composed of two or more units, engaged in departmental administrative or management activities. Plans, assigns, and reviews the work of subordinates, and is immediately responsible to a high-level administrative or executive officer or employee for the satisfactory completion of work performed in the unit or section.
‘1 Acts as principal assistant to an administrative or executive officer or employee responsible for the supervision of an exceptionally large office, commonly styled a bureau, or equivalent, engaged in routine clerical activities, or of a very large office, commonly styled a division, or equivalent, engaged in departmental administrative or management activities.
“ Performs highly difficult and responsible independent, specialized, administrative or management work related to personnel administration, accounts and budgeting, methods and organization, etc.
‘ ‘ May represent a department in inter-departmental functions or programs, or in relations with civic groups or employee organizations.
‘‘ Performs related work as required.”
I am therefore persuaded, in light of the foregoing and the comparisons, that this latter specification of duties and responsibilities relating to the title of Administrative Associate is the only specification accurately delineating the actual duties, job and responsibilities of the petitioner or the typical tasks performed by him. As previously stated by me, petitioner has a very exacting and responsible position in the running of his department and supervision of the staff of 50 people and their entailed work. His direct supervision and responsibility encompasses personnel who have equal or higher titles; his work is the same and even more exacting and responsible than the qualifications respondents have set forth for the position he seeks. Moreover, his appeal was strongly indorsed and recommended by the head of the Finance Department.
The court has studied with decidedly keen interest the splendid memorandum, of law submitted herein by the respondents, which *749 sets forth the historical genesis and background of the city’s outmoded classification system which culminated in the composition of the Career and Salary Plan with its concomitant advantages of more accurate titles and changed salary structure. Unquestionably, the plan was sorely needed and has done and will continue to serve a very splendid purpose. Unfortunately, however, as with most innovations, certain inequities do arise which affect some particular individuals, for in a city-wide re-evaluation and reclassification, as here, of some 125,000 positions, it is manifest that there will be single individuals who would be critical of their own reclassification. That, however, is not a tenable objection to the Career and Salary Plan. As stated in Matter of Greenwald v. Schechter (17 Misc 2d 611, 612, 613) “ there is no doubt that the respondents in endeavoring to put into effect the career and salary plan were obliged to face realities. Formulas were set as a guide and consideration given to the duties of the positions prior to and after reclassification.” “Although each employee would like to be the final judge of the importance of his own position, the responsibilities attached thereto, the value of his services, the qualification to carry out the work, of necessity such valuation must be left to the discretion of the agency, in this case the personnel director, created for such purpose; and his opinion must prevail unless there is palpable error or prejudice clearly shown. Safeguards are provided for by appeal to the classification board.”
And so, while the Career and Salary Plan is to be applied and enforced in the discretion of the board, nevertheless the courts are not divested of the power to grant relief in the particular instance where the action of the respondents is shown to be arbitrary or unreasonable.
Accordingly, in review of the record before me and for the reasons herein stated, I am of the ultimate opinion that the determination of respondents in respect of petitioner was arbitrary and unreasonable in his circumstances and that petitioner’s application must be granted. Settle order.